UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CASEY RUE, *et al.*,

                             Plaintiffs,

v.

VMD SYSTEMS INTEGRATORS INC.,

                             Defendant.

---

1:24-CV-00476 JLS (MJR)

DECISION AND ORDER

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 12) Before the Court is defendant's motion to change venue to the Rochester Division of the Western District of New York. (Dkt. No. 11) For the following reasons, defendant's motion to change venue is denied.[1]

## BACKGROUND

On May 16, 2024, plaintiffs Casey Rue and Lisa Boshnack commenced this putative class action lawsuit on behalf of themselves and more than 100 similarly situated individuals for untimely payment of wages, unlawful wage deductions, failure to provide

---

[1] While motions for changes of venue are not listed among the types of relief in Section 636(b) that are expressly dispositive, most district courts in the Second Circuit conclude that motions for a change of venue are non-dispositive and are therefore "within the pretrial reference authority of magistrate judges." *Skolnick v. Wainer*, 2013-CV-4694, 2013 WL 5329112 (E.D.N.Y. Sept. 20, 2013). *See also Salgado v. NYS Dep't of Corrections and Community Supervision*, 13-CV-01108, 2018 WL 1663255 at *2 (W.D.N.Y. April 6, 2018) ("[m]ajority of recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive") (collection cases).

compliant wage statements, and deficient pay notifications, all in violation of New York Labor Law. (Dkt. No. 1) Plaintiffs and putative class members are former or current employees of VMD Systems Integrators, Inc. ("VMD"). (*Id.* at ¶ 4, ¶ 6, ¶¶ 8-10) VMD is a security contractor, headquartered in Fairfax, Virginia, that provides privately employed security agents for various airports.[2] (*Id.*) Plaintiffs and the putative class members work or worked for VMD as airport security screeners ("screeners") at Fredrick Douglas Greater Rochester International Airport in Rochester New, York. (*Id.* at ¶ 16) Screeners are paid on an hourly basis. (*Id.* at ¶ 28) It is alleged that screeners are manual workers within the meaning of the New York Labor Law, and that more than twenty-five percent of their duties consist of physical tasks such as screening passengers by pat downs and wands; lifting and carrying passengers' bags and security bins; searching luggage; and operating security equipment. (*Id.* at ¶¶ 4-7, ¶ 19)

The complaint alleges that, from May 16, 2018 through July 14, 2023, plaintiffs and putative class members were paid by VMD through a semi-monthly pay period that was approximately fifteen days in duration. (*Id.* at ¶ 21) Plaintiffs allege that this manner of payment violated Section 191(1)(a) of the New York Labor Law, which requires that manual workers be paid weekly and no later than seven calendar days after the end of the week in which their wages are earned.[3] (*Id.* at ¶¶ 22-23)

---

[2] It is alleged that the Court has jurisdiction over the lawsuit pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Dkt. No. 1, ¶ 2) It is further alleged that VMD is a Virginia corporation and is diverse from plaintiffs and at least one or more putative class members, who are citizens of the New York. (*Id.*)

[3] The complaint acknowledges that, beginning on July 1, 2023, VMD began paying plaintiffs and putative class members on a weekly basis. (Dkt. No. 1, ¶ 25) However, the complaint alleges that even after VMD switched to a weekly pay period for hourly employees, VMD continued to pay plaintiffs and putative class members more than seven days after the end of the pay period in which their wages were earned, in violation of New York Labor Law. (*Id.* at ¶ 27)

The complaint further alleges that VMD violated Section 193 of the New York Labor Law by taking unauthorized deductions from the wages of plaintiffs and other putative class members. (*Id.* at ¶¶ 34-41) It is alleged that these deductions were not authorized in writing by the employees, nor were the deductions taken for the benefit of the employees.[4] (*Id.*) It is also alleged that defendant took deductions from the wages of plaintiffs and putative class members for overpayment of wages, without following New York Labor Law's prescribed requirements for recovery of such overpayments. (*Id.* at ¶¶ 43-50) The complaint alleges that defendant violated Section 195(1) of the New York Labor Law by failing to provide plaintiffs and putative class members with a notice, at the time of hire, stating their overtime pay rate and "regular pay day." (*Id.* at ¶¶ 51-58) It is further alleged that the pay statements provided to plaintiffs and putative class members failed to include the phone number of defendant, the screener's hourly pay rate, and an adequate explanation of any wage deductions, in violation of Section 195(3) of the New York Labor Law. (*Id.*)

## DISCUSSION

"A district court may transfer any civil action to any other district or division" based on "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). *See also* W.D.N.Y. Local Rule 5.1(c) (noting that parties may request "transfer of a case from Buffalo to Rochester."). Deciding a motion to transfer pursuant to Section

---

[4] By way of example, the complaint alleges that defendant took deductions from the wages of plaintiffs and putative class members for such items as "covid", a "trust fee", "leave credit", and "NSF." (Dkt. No. 1, ¶¶ 36-41) According to the complaint, the purpose and nature of these deductions were never explained to employees. (*Id.*) The complaint also alleges that defendant took deductions from the named plaintiffs' wages for health insurance, despite the fact that neither named plaintiff received health insurance coverage through their employment with defendant. (*Id.* at ¶ 42)

3

1404(a) involves a two-part injury. *Gray v. Walgreens Boots All., Inc.*, 20-CV-04415, 2021 WL 1087696, at *1 (E.D.N.Y. Feb. 11, 2021). First, the Court must consider whether the action could have initially been brough in the transferee court. (*Id.*) Here, there appears to be no dispute that this lawsuit is properly venued in the Western District of New York. Plaintiffs reside in this District and performed their job duties for VMD here. To that end, this case could proceed either in the Buffalo Division or the Rochester Division of this District.

The second prong of the inquiry requires the Court to determine whether the interests of justice and the convenience of the parties and witnesses will be served by the transfer. *Id.* "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *Sarraco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 355 (E.D.N.Y. 2016) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). In determining whether transfer is appropriate, courts consider a "non-exhaustive" list of factors, including "(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the witnesses, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Mitchell v. Annucci*, 21-2978, 2023 U.S. App. LEXIS 30907 (2d Cir. Nov. 21, 2023); *Armstrong v. Costco Wholesale Corp. & Nice-Pak Productions, Inc.*, 234 F. Supp. 3d 367, 370 (E.D.N.Y. 2017).

There is "no rigid formula for balancing the factors and no single one of them is dispositive." *City of Perry v. Procter & Gamble Co.*, 15-cv-801, 2016 U.S. Dist. LEXIS

133584 (S.D.N.Y. Sept. 28, 2016). The party seeking transfer has the burden of demonstrating "a strong case for transfer." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). *See also Federal Ins. Co. v. Bax Global Inc.*, 09-cv-2739, 2010 U.S. Dist. LEXIS 99177 (E.D.N.Y. Sept. 20, 2010) ("The moving party bears the burden to make a clear and convincing showing that a transfer is appropriate."). With these standards in mind, the Court considers the relevant factors in turn below.

<u>Locus of Operative Facts</u>

To ascertain the locus of operative facts, "courts look to the location where the relevant events occurred." *Charlot v. Ecolab, Inc.*, 12-CV-4543, 2018 WL 11427944, at *5 (E.D.N.Y. Mar. 3, 2018). Courts have found that the locus of operative facts relating to corporate decision-making or compensation policies occurs at a defendant's headquarters. *Charles v. Nationwide Mut. Ins. Co. Inc.*, 09-CV-94, 2010 WL 11627494 (E.D.N.Y. Apr. 1, 2010). *See also Earley v. BL's Wholesale Club, Inc.*, 09 Civ. 3529, 2007 WL 1624757 (S.D.N.Y. June 4, 2007) ("Plaintiff alleges a corporate policy of denying overtime pay to employees throughout the United States. Although there has not yet been any discovery on this issue, it is likely that Defendant's national overtime policies were determined at its headquarters in Massachusetts."); *Nicks v. Koch Meat Co.*, 260 F. Supp.3d 942, 956 (N.D. Ill. 2017) ("Courts recognize that, in [] cases challenging a corporate defendant's overtime pay policies, the corporation's headquarters is often the situs of many of the material events, even if the employees work elsewhere.").

Here, plaintiffs have submitted affidavits indicating that defendant's wage policies were established by individuals working at VMD's corporate headquarters in Fairfax,

5

Virginia. (Dkt. Nos. 14-4, 14-8) Specifically, plaintiffs Boshnack and Rue aver that when they complained about late pay and/or unlawful deductions from their wages, VMD supervisors in Rochester were unable to answer their questions and instead directed them to contact the VMD human resources department in Fairfax, Virginia. (*Id.*) For example, Rue indicates that a human resources employee at VMD's headquarters in Virgina told her that screeners were paid semi-monthly, and not weekly, because Transportation Security Agency ("TSA") agents are paid in the same manner. (Dkt. No. 14-8) According to plaintiff Boshnack, when VMD deducted one or more health insurance payments from her wages, even though she did not receive health insurance coverage through VMD, a VMD employee in Fairfax, Virginia told her, "that's the way things work, you have to pay for it." (Dkt. No. 14-4) Moreover, according to plaintiffs, communications to employees regarding the change from a semi-monthly to a weekly pay period were sent by the VMD controller and vice-president, both of whom work at VMD headquarters in Virigina. (*Id.*) Communications regarding changes in pay policies as well as plaintiffs' pay stubs bore VMD's Virginia address. (Dkt. Nos. 14-5, 14-7) Thus, the site of material events in this case appears to be Fairfax, Virginia, and not Rochester, New York, where defendant seeks transfer.

Defendant contends that even if some of the operative facts emanated from Fairfax, Virginia, a transfer to Rochester is still appropriate because (1) other facts relevant to the action took place in Rochester and (2) no relevant facts occurred in Buffalo. Defendant emphasizes that plaintiffs and putative class members all worked exclusively in Rochester, were supervised in Rochester, were primarily trained in Rochester, and received payment in Rochester. Defendant notes that the nature of the work performed

6

in Rochester by the screeners will be relevant as to whether plaintiffs and other putative class members qualify as manual workers under the New York Labor Law. Certainly, some facts of this case have a connection to Rochester since plaintiffs and other potential class members performed their job duties there. However, the gravamen of plaintiffs' claims center on unlawful wage policies and practices, all of which seem to have been determined and implemented at VMD corporate headquarters in Fairfax, Virginia.

Defendant correctly notes, and the Court acknowledges, that none of the operative facts of this case occurred in Buffalo. But the Court also notes that defendant is seeking a change of division as opposed to a transfer to another district. Indeed, the locus of operative facts "clearly has more weigh when analyzing a transfer of district than when considering a change of divisional venue." *Click v. Mercedes-Benz US Int'l, Inc.*, 609 F. Supp. 3d 1256 (N.D. Ala. June 30, 2022); *Allen v. Dolgencorp, Inc.*, 2008 U.S. Dist. LEXIS 130392, 2008 WL 11380102, at *2 (N.D. Ala. Sept. 19, 2008).

Because none of the operative facts in this case have a connection to Buffalo, while some of the relevant facts have a connection to Rochester, this factor weighs in favor of transfer. However, because the *main* locus of operative facts occurred in Fairfax, Virginia, and not in Rochester, New York, and because defendant seeks a divisional transfer and not a district transfer, this factor weighs only slightly in defendant's favor.

*Convenience of the Witnesses and the Parties*

"Convenience of the witnesses generally is the most important consideration when deciding a motion to transfer venue under section 1404(a)." *Schwartz v. Marriott Hotel Services, Inc.*, 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002). Here, defendant argues that transfer is appropriate because Rochester is the most convenient forum for the parties as

well as most of the witnesses. Defendant notes that Boshnack and Rue's last known addresses from their VMD employment files were both located in Rochester. (Dkt. No 11-2) Defendant also indicates that it intends to rely on testimony from absent class members and their supervisors, the majority of whom live and work in Rochester. (*Id.*)

Rue's declaration indicates that she resides in Tonawanda, New York, which is within the Buffalo Division of the Western District. (Dkt. No. 14-8) Boshnack avers that she elected to bring this lawsuit in the Buffalo Division, and that the Buffalo Division is equally convenient for her as the Rochester Division. (Dkt. No. 14-4) Thus, the Buffalo Division is a convenient venue for plaintiffs, who are also likely to serve as significant material fact witnesses in this case.

"Discovery of absent class members is rarely permitted due to the facts that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions, which is to prevent massive joinder of small claims." *Balderramo v. Go N.Y. Tours*, 15 Civ. 2326, 2021 WL 6427602 (S.D.N.Y. Dec. 7, 2021). Defendant has not specifically identified any potential class member it intends to call as a witness, nor has defendant identified any relevant knowledge or information possessed by an absent class members that cannot be ascertained through the named plaintiffs or defendant's own employees.[5] Likewise, defendant has not put forth any special

---

[5] Defendant anticipates that "absent putative class members will testify about the type of duties they performed (to determine whether they were manual workers), whether VMD's semi-monthly payroll calendar damaged them, [and] whether they authorized deductions from their paychecks." (Dkt. No. 11-1, pgs. 8-9) The named plaintiffs and VMD supervisors have first-hand knowledge of the job duties performed by putative class members, and VMD would, presumably, have records of any authorizations signed by putative class members regarding wage deductions. Statutory damages, which might not be considered until after a class is certified and liability is proven, are likely to be determined mainly through documentary evidence and payroll records rather than through testimony by individual class members.

8

circumstance here that would seem to warrant extensive discovery from absent class members. Thus, the Court does not consider the location of absent class members to be a relevant consideration with respect to witness or party convenience.

Next, with regard to any VMD supervisors who reside in Rochester, defendant fails to specifically explain why these individuals cannot travel from Rochester to Buffalo or why such a request would be unduly or overly burdensome. Indeed, courts have held that travel equivalent to that of the distance between Buffalo and Rochester, or approximately 74 miles, is not the type of inconvenience that supports a motion to transfer. *See Moore v. Allentown Vill. Soc., Inc.*, 13-CV-6263, 2013 WL 4008740 (W.D.N.Y. Aug. 5, 2013) (denying motion to transfer because "any inconvenience of parties or witnesses traveling between Buffalo and Rochester for Court proceedings is *de minimis*"); *Market Transition Facility of N.J. v. Twena*, 941 F. Supp. 462, 467-68 (D.N.J. 1996) (refusing transfer from Newark to Brooklyn); *Computers Plus Inc. v. AGS Enterprises, Inc.*, 89-1406, 1989 U.S. Dist. LEXIS 3972 (E.D. Pa. Apr. 13, 1989) (90 mile distance between the cities of Philadelphia and Baltimore will not cause significant inconvenience); *New York v. Operation Rescue Nat'l*, 69 F. Supp. 2d 408, 417 (W.D.N.Y. 1999) (noting that "courts have repeatedly held that traveling [this sort of relatively short distance between Buffalo and Rochester] is not the type of 'inconvenience' that supports a motion to transfer under § 1404(a)" and collecting additional cases).

Moreover, "courts generally grant less weight to the convenience of the witnesses when the witnesses are either parties to the action or are closely aligned with a party to the action." *Nationwide*, 2010 U.S. Dist. LEXIS 165337; *accord Moore's Federal Practice* § 111.13)1)(f), pp. 110-80-11-81 (3d ed. 2007) (stating that party witnesses "and those

closely aligned with a party, such as employees," are "presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail.").

Finally, any witnesses from VMD's corporate office in Virginia will be required to travel regardless of whether the case is venued in Buffalo or Rochester. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 696, n. 8 (S.D.N.Y. 2009) (collecting cases noting that, where an individual will be required to travel regardless of whether a transfer is granted, a marginally shorter distance is not significant); *Nationwide*, 2010 U.S. Dist. LEXIS 165337, *10 ("Because such witnesses will be required to travel whether the action is in New York or Ohio, this fact neither supports nor disfavors transfer."); *Ward v. Stewart*, 133 F. Supp. 3d 455 (N.D.N.Y. 2015) (transfer from the Northern District of New York to the Western District of New York denied because, *inter alia*, several key out-of-state witnesses would be forced to travel regardless of whether transfer was granted, and there were no affidavits from any potential witnesses claiming a hardship).[6]

---

[6] Defendant also argues that Rochester is a more convenient location for corporate employees, who are based at VMD's headquarters in Virginia, because these employees "can perform other work-related in-person tasks at VMD's Rochester location when they travel to Rochester in connection with this case and utilize their employer's office space in Rochester, New York." (Dkt. Nos. 11-1, 11-2) Defendant also notes that these witnesses are "familiar with the Rochester area due to past business trips." (*Id.*) The Court does not find these arguments persuasive. First, the Court does not consider a witness' ability to perform work tasks when traveling for a court-appearance or other case related matters to be a relevant consideration in moving venue, especially where the movant must prove that transfer is appropriate by clear and convincing evidence and some deference must be provided to plaintiffs' choice of forum. Also, the Court does not envision a scenario where VMD employees from Fairfax, Virginia would be required to regularly travel for appearances in this case, such that attention should be paid to their familiarity with Rochester or their ability to utilize a nearby office. Many aspects of discovery can be accomplished remotely. In fact, plaintiffs have indicated that they intend to take virtual depositions in this case in order to save on costs and alleviate travel time. (Dkt. No. 14-1) Thus, it may well be the case that Virginia witnesses would need to travel Buffalo only once, to testify in the event the case proceeds to trial.

For these reasons, Court finds that defendant has not met its burden in establishing that the convenience of the parties or the convenience of the witnesses weighs in favor of transfer to Rochester. Thus, the Court finds this factor to be neutral.

*Location of Documents and Relative Ease of Proof*

Defendant submits that this factor weighs in favor of transfer because the bulk of any hard copies of wage records, or other relevant documents, are located in either Fairfax, Virginia or Rochester, New York. However, "[t]he location of relevant documents has become a largely neutral factor in the modern world of scanning and emailing documents of all sizes with ease." *Lowinger v. Rocket One Cap.*, LLC, 23 Civ. 9243, 2024 WL 2882622 (S.D.N.Y. 2024).

Moreover, defendant has not indicated why any of the documents located in either Rochester or Fairfax could not be produced electronically. *See King v. Aramark Servs., Inc.*, 19-CV-77, 2019 WL 3428833 (W.D.N.Y. July 30, 2019) ("The location of relevant documents and access to proof is entitled to little weight unless the defendant makes a detailed showing as to the burden it would incur absent transfer.") (internal citations omitted). The Court presumes that with modern technology most or all relevant documents can be transferred to Buffalo without undue expense. *WD Encore Software, LLC v. Software Mackiev Co.*, 6:15-CV-6566, 2016 U.S. Dist. LEXIS 34575 (W.D.N.Y. Mar. 17, 2016). *See also Am. S.S. Owners Mut. Prot. And Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). Thus, the Court finds this factor to be neutral.

*Availability of Process to Compel Attendance of Unwilling Witnesses*

This factor "requires a consideration of the Court's power to compel attendance of unwilling witnesses, as a district court can only subpoena witnesses within the district or within 100 miles of the [court]." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006). However, this factor is "generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Ruiz v. United States*, 13-CV-1241, 2014 U.S. Dist. LEXIS 131823 (E.D.N.Y. 2014).

Here, defendant has not specifically identified any third-party, non-employee witness who would need to be compelled to appear at trial. *Ward*, 133 F. Supp. 3d at 466 (factor does not favor transfer where defendant "has given no indication that any of the named individuals, or any other non-party witnesses for that matter, would refuse to appear or that deposition or videotaped testimony would be an inadequate substitute in the event such a refusal occurred"); *Nationwide*, 2010 U.S. Dist. LEXIS 165337, *16 ("because there is no indication that any witness would refuse to appear, this factor is neutral.").

Defendant generally points to the fact that most class members live outside Buffalo. However, as stated above, it is a high bar to require discovery from absent class members. Regardless, defendant submits that the majority of absent class members reside in Rochester, and "the subpoena power is equally effective in either Rochester or Buffalo." *People of State of New York ex rel. Spitzer v. Operation Rescue Nat.*, 69 F. Supp. 2d 408, 418 (W.D.N.Y. 1999). For all these reasons, this factor is also neutral.

*Relative Means of the Parties*

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. International Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). *See also Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where "[p]laintiff's are individuals who are suing a large corporation which possesses considerably greater financial assets.").

Defendant is a sophisticated company with offices in different states and hundreds of employees. Plaintiffs are hourly workers who have elected to file their action in the Buffalo Division and have objected to defendant's request to transfer. Thus, this factor weighs against transfer.

*Plaintiff's Choice of Forum*

Ordinarily, a plaintiff's choice of forum is accorded great weight." *Bausch & Lomb Inc. v. Mimetogen Pharm. Inc.*, 14-CV-6640, 2015 WL 13574334, at *4 (W.D.N.Y. Sept. 28, 2015). *See also Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) ("A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.") (internal citations omitted). "This 'is particularly so when the plaintiff resides in the judicial district where the suit was filed." *Mimetogen*, 2015 WL 13574334, at *4. *See also Lencco Racing Co. v. Arctco, Inc.*, 953 F. Supp. 69, 72 (W.D.N.Y. 1997) ("[P]laintiff's choice of forum should not be changed lightly and should be accorded substantial weight, particularly when the plaintiff resides in the judicial district where the suit was filed.").

However, courts have noted that the weight given to this factor is diminished where the operative facts have "little or no connection" with the forum chosen by the plaintiff. *See Stein v. Microelectronic Packaging, Inc.*, 98 Civ. 8952, 1999 U.S. Dist. LEXIS 11375, (S.D.N.Y. 1999). "If there is little or no connection of the operative facts to the chosen forum but it is the plaintiff's home district, the plaintiff's choice of forum is entitled to less deference even though it still carries some deference as the home district." *Easyweb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 349 n. 1 (E.D.N.Y. 2012).

Likewise, a plaintiff's choice of forum is a less significant consideration in cases, like this one, that involve a putative class action rather than an individual lawsuit. *See Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). *See also Adeva v. Intertek USA Inc.*, 04-CV-6937, 2009 U.S. Dist. LEXIS 18161, at *7 (E.D.N.Y Mar 10, 2009) ("[A] plaintiff who sues as a class representative . . . is entitled to less deference in her choice of forum."). Nevertheless, some deference is still due to the named plaintiffs' choice of forum. *See Martignago v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. Jan. 13, 2012) (plaintiff's choice of forum was entitled to "less significant consideration" because she sought to represent a class of employees, but "some deference [was] due and, competing against [d]efendant's preference, [plaintiff's] preference prevails."); *Earley*, 2007 WL 1624757 ("[T]his factor weighs in favor of plaintiff, but with considerably less force than it would under other circumstances.").

Here, plaintiffs' choice of forum is given less deference than it otherwise would because the lawsuit involves a putative class action with little to no connection to the Buffalo Division of the Western District of New York. However, plaintiff Rue resides in the Buffalo Division. Plaintiff Boshnack filed the action here and indicates that this Division is

a convenient forum. Thus, some deference should still be paid to the plaintiffs' choice of forum, and this deference weighs against transferring the case to Rochester. *See Nationwide*, 2010 U.S. Dist. 165337, *7 ("Despite the fact that plaintiff seeks certification as a collective action under the FLSA, plaintiff's choice of forum remains significant given that she resides in New York. Thus, this factor does not weigh in favor of transfer.")

<u>*Balancing of the Factors*</u>

"Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum . . . discretionary transfers are not favored." *Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (summary order). Here, the locus of operative facts weighs slightly in favor of a transfer. However, both the relative means of the parties and the plaintiffs' choice of forum weigh against a transfer. The remaining factors are neutral. On balance, the factors do not favor transfer and defendant has failed "to make a clear-cut showing that transfer is in the best interests of the litigation." *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (citation omitted).

The Court has also taken into consideration that this is a request for a divisional transfer, as opposed to a transfer of districts, and the relatively short distance between the Buffalo and Rochester courthouses. *See Moore*, 2013 U.S. Dist. LEXIS 110362 (denying transfer from Rochester Division to Buffalo Division even though the alleged trademark infringement action occurred in Buffalo and many of the likely witnesses were located in the Buffalo area because any inconvenience of the parties or witnesses in traveling from Buffalo to Rochester for court proceedings is *de minimis*, and the factors cited by defendant did not overcome deference owned by the court to plaintiff's choice of forum).

## CONCLUSION

For the foregoing reasons, defendant VMD Systems Integrators, Inc.'s motion to change venue to the Rochester Division of the Western District of New York (Dkt. No. 11) is denied.

**SO ORDERED.**

Dated:   January 14, 2025
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge